UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN B.,

              Plaintiff,

                             **Case No. 3:19-cv-16558**

       **v.**                    **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

              Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff John B. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On September 19, 2017, Plaintiff filed his application for benefits, alleging that he has been disabled since August 7, 2017. R. 256, 363−64. The application was denied initially and upon reconsideration. R. 286−91, 293−95. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

1

administrative law judge. R. 298−99. Administrative Law Judge ("ALJ") John Campbell held a hearing on November 26, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 211−55. In a decision dated December 18, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 7, 2017, Plaintiff's alleged disability onset date, through the date of the decision. R. 189−205.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 1, 2019. R. 7−11. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 8, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 18.[2] On that same day, the case was reassigned to the undersigned. ECF No. 19. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.  Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 48 years old on his alleged disability onset date. R. 203. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 7, 2017, his alleged disability onset date, and the date of the administrative decision. R. 191.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: posttraumatic stress disorder ("PTSD"); essential thrombocytosis and thrombosis; hypertension; chronic fatigue syndrome; status post meniscectomy of the left knee; bilateral hearing loss and tinnitus; and degenerative changes of the lumbosacral spine. *Id*. The ALJ also found that Plaintiff's diagnosed impairments of obstructive sleep apnea, migraines, and irritable bowel syndrome ("IBS"), and his alleged impairment of fibromyalgia were not severe. R. 191−93.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 193−96.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 196−203. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a penitentiary corrections officer. R. 203.

At step five, the ALJ found that a significant number of jobs−*i.e*., approximately 700,00 jobs as a mail clerk; approximately 58,000 jobs as a price marker; and approximately 13,140 jobs as a photocopier machine operator−existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 204. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 7,

2017, his alleged disability onset date, through the date of the decision. R. 205.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. ECF No. 11; *Plaintiff's Reply Brief*, ECF No. 17. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 16.

## IV.    RELEVANT MEDICAL EVIDENCE

On September 20, 2018, Plaintiff's treating psychiatrist, Mohamad Al-Rashdan, M.D., completed a fill-in-the blank and check-the-box Mental RFC Questionnaire form. R. 929−33 (Exhibit 12F, copy of Dr. Al-Rashdan's questionnaire). Dr. Al-Rashdan reported that he saw Plaintiff every two months from July 11, 2015, to September 21, 2018, and diagnosed Plaintiff with, *inter alia*, PTSD and thrombocythemia. R. 929. Plaintiff's prognosis was guarded. *Id*. Dr. Al-Rashdan noted that symptoms of Plaintiff's prescribed medications included dizziness, fatigue, poor concentration, and nausea. *Id.* Clinical findings included restlessness, irritable mood, anxious-irritable affect, circumstantial thought process, and morbid ideation. *Id*. Dr. Al-Rashdan also identified Plaintiff's signs and symptoms as follows: decreased energy; feelings of guilt or worthlessness; impairment of impulse control; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience, which are a source of marked stress; persistent disturbances of mood or affect; intense and unstable interpersonal relationships and impulsive and damaging behavior;

emotional lability; vigilance and scanning; sleep disturbance; and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring at least once a week. R. 930.

In assessing Plaintiff's ability to do work-related activities on a day-to-day basis in a regular work setting, Dr. Al-Rashdan opined that Plaintiff had an unlimited or very good mental ability to understand, remember, and carry out "very short and simple instructions[,]" ask simple questions or request assistance, and be aware of normal hazards and take appropriate precautions. R. 931. Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors was seriously limited, but not precluded. *Id*. However, Plaintiff was unable to meet competitive standards with respect to the following: remember work-like procedures; maintain attention for two-hour segments; maintain regular attendance and be punctual within customary and usual strict standards; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; making simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and deal with normal work stress. *Id*.

According to Dr. Al-Rashdan, Plaintiff's ability to set realistic goals or make plans independently of others was seriously limited, but not precluded; Plaintiff was unable to meet competitive standards in his abilities to understand and remember and carry out detailed instructions; and Plaintiff had no useful ability to function when dealing with the stress of semiskilled and skilled work: "His PTSD causes severe anxiety / irritability and hypervigilance

this impairs his social and interpersonal functioning." R. 932. Dr. Al-Rashdan also found that Plaintiff's ability to adhere to basic standards of neatness and cleanliness was unlimited or very good; Plaintiff's abilities to maintain socially appropriate behavior, travel in unfamiliar places, and use public transportation were seriously limited, but not precluded; and Plaintiff was unable to meet competitive standards in his ability to interact appropriately with the general public: "Hypervigilance and mood lability (which are some of his PTSD symptoms) in his case are very distressing and cause him to have anger outbursts and panic attacks." *Id*. Dr. Al-Rashdan also indicated that Plaintiff's psychiatric condition exacerbates his experience of pain or other physical symptom: "Chronic anxiety and / or depression which is common in PTSD is associated with increased somatic complaints and attention in pain perception." *Id*.

Dr. Al-Rashdan further opined that Plaintiff's impairments or treatment would cause him to be absent more than four days per month; that his impairment has lasted or could be expected to last at least twelve months; that Plaintiff is not a malingerer; and that Plaintiff's impairments are reasonably consistent with the symptoms and functional limitations described in the evaluation. R. 933. Dr. Al-Rashdan also stated, "He has a hematologic condition for which he takes medications which further exacerbate fatigue, anxiety and cause sedation." *Id*. Finally, Dr. Al-Rashdan opined that Plaintiff could manage benefits in his own best interest. *Id*.

## V.      DISCUSSION

### A.      RFC and Medical Opinions

Plaintiff contends that the ALJ erred in crafting his RFC. *Plaintiff's Brief*, ECF No. 11, pp. 13–21, 25; *Plaintiff's Reply Brief*, ECF No. 17, pp. 1–5. Plaintiff specifically argues that the ALJ erred in weighing the opinions of his treating psychiatrist, Mohamad Al-Rashdan, M.D., including that the ALJ mischaracterized the medical evidence; that the ALJ explicitly found a

portion of Dr. Al-Rashdan's opinion "persuasive," but then crafted an RFC that did not account for the mental limitations identified by Dr. Al Rashdan; and that the ALJ erred when weighing the opinions of the state agency reviewing physicians. *Id*. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer,* 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform light work with certain additional exertional and nonexertional limitations, as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps/stairs; can never climb ropes, ladders, or scaffolds; and can occasionally balance, crouch, crawl, and kneel. The claimant must avoid concentrated exposure to extreme cold. The claimant cannot work at unprotected heights, near exposed moving mechanical

parts, with dangerous machinery (such as machinery that cuts/tears/cuts/shears/punctures in its operations), or near strobe lights or flashing lights. The claimant can perform simple repetitive tasks; can make simple decisions in the workplace; can carry out simple instructions; can occasionally adjust to changes in workplace routines; can maintain occasional contact with supervision and coworkers; and can never maintain contact with the public (either in person or by phone). The claimant engages in frequent hearing and can work in environments with a moderate noise intensity level. The claimant requires one unscheduled absence per month. The claimant will be off task 10 percent of the time in an 8-hour work day in addition to breaks allowed by an employer (defined as 15 minutes each morning and afternoon and 30 minutes for lunch).

R. 196. In making this determination, the ALJ detailed record evidence regarding Plaintiff's

physical impairments, including, *inter alia*, treatment notes from 2017 to 2018 showing mostly

normal findings; a June 2017 diagnosis of hypertension; the July 2017 examination by Qing Tai,

M.D., that revealed mostly normal range of motion findings except for a 15-degree limitation in

forward flexion that did not contribute to functional loss, no evidence of pain with weight-

bearing, no evidence of tenderness in the joints or back, an ability to perform repetitive use

without any additional loss of functioning, no evidence of incoordination, full strength in the

hips, full strength in the knees, full strength in the ankles and toes bilaterally, normal deep

tendon reflexes, intact sensation, negative straight leg raising bilaterally, no ankylosis of the

spine, and normal neurologic findings; July 2017 x-rays of the lumbosacral spine which revealed

degenerative changes at only L5-S1 and which, according to Dr. Tai, do not impact Plaintiff's

ability to work; a normal August 2017 physical examination; no evidence of leukemia,

lymphoproliferative disorder, or abnormal myeloid maturation despite Plaintiff's diagnosis of

essential thrombocythemia; an October 2017 examination by Sarah Easwa, M.D., who noted

essentially normal findings including normal skin findings, normal lung findings, normal heart

findings, normal abdominal findings, full range of motion in the extremities, normal motor

strength, and normal neurologic findings; Plaintiff's report in October 2017 of fatigue that was

12

perhaps due to his busy lifestyle, his return to school, his excellent appetite with occasional

nausea that eventually subsides with no abdominal pain, and no joint or back pain; a November

2017 a physical examination that revealed normal lung, heart, abdominal, and extremity

findings; a November 2017 report by Michael Sher, M.D., who addressed Plaintiff's complaints

of chronic fatigue and diagnosed chronic fatigue syndrome, but noted that a sleep study did not

show significant sleep apnea; the December 2017 diagnosis by Paul Rossos, M.D., of mild

bilateral sensorineural hearing loss, with an excellent prognosis; the findings on physical

examination and testing in November 2017 and throughout 2018 by Carrie Edelman, M.D., who

noted positive tender points throughout, bilateral knee crepitus, and left knee tenderness but who

otherwise reported essentially normal findings, including normal respiratory findings, normal

cardiovascular findings, normal gait, full range of motion in the upper and lower extremities, and

normal neurologic findings. R. 197–200.

The ALJ also detailed record evidence regarding Plaintiff's mental impairments,

including, *inter alia*, "mostly normal mental status examination findings," stating as follows:

> The mostly normal mental status examination findings noted in the record support
> the finding that claimant can perform work at the RFC. The claimant is a veteran
> with a history of combat duty during Desert Storm from October 1987 to August
> 1991 (Ex. 4F at pg. 1). Due to his experiences, the claimant suffers from PTSD. In
> June 2017, a mental status examination noted normal findings including normal
> psychomotor activity, normal mood, normal speech, organized thought processes,
> adequate insight, intact judgment, no suicidal ideation, normal alertness, intact
> orientation, and grossly normal cognitive domains (Ex. 18F at pg. 88). On August
> 10, 2017, the claimant reported he has had less distressing and less frequent PTSD
> symptoms (Ex. 11F at pg. 32). He reported periodic exacerbations triggered by
> certain odors, but he reported his nightmares are less frequent. And, he denied
> having any suicidal thoughts. A mental status examination noted normal findings
> including normal psychomotor behavior, normal movements, full mood, normal
> speech, organized thought processes, no evidence of delusions or hallucinations, no
> homicidal or suicidal ideation, good insight, intact judgment, normal impulse
> control, normal alertness, intact orientation, and normal cognitive functioning (Ex.
> 11F at pgs. 32-33). In August 2017, a mental status examination noted essentially
> normal findings including normal mood, normal speech, organized thought

processes, no suicidal ideation, good insight, intact judgment, intact alertness, intact orientation, and normal cognitive findings (Ex. 18F at pg. 206). In November 2017, an examination noted normal alertness, intact orientation, normal mood, and normal affect (Ex. 7F at pg. 1). In November 2017, the claimant complained of significant difficulties with memory, concentration, and attention. The claimant also alleged social isolation and hypervigilance. Upon examination, Dr. Walter Florek, Ph.D., reported such clinical signs as constricted affect and depressed/anxious mood, but otherwise, Dr. Florek reported normal findings including clear speech, logical and goal directed thought processes, intact orientation, no indication of delusions or hallucinations, no evidence of a thought disorder, high intelligence, and good insight. In December 2017, a mental status examination noted essentially normal findings including normal mood, normal speech, organized thought processes, no suicidal ideation, good insight, intact judgment, intact alertness, intact orientation, and normal cognitive findings (Ex. 18F at pg. 181). In March 2018, a mental status examination noted an intermittent down mood, but otherwise, normal findings were noted including normal speech, organized thought processes, no suicidal ideation, good insight, intact judgment, intact alertness, intact orientation, and normal cognitive findings (Ex. 18F at pg. 163). In June 2018, an examination noted essentially normal findings including okay mood, normal speech, organized thought processes, no suicidal ideation, good insight, intact judgment, intact alertness, intact orientation, and normal cognitive findings (Ex. 18F at pg. 131). In September 2018, a mental status examination noted an anxious mood, but otherwise, normal findings were noted including normal speech, organized thought processes, no suicidal ideation, good insight, intact judgment, intact alertness, intact orientation, and normal cognitive findings (Ex. 18F at pgs. 100-101). As stated, the mostly normal mental status examination findings noted in the record support the finding the claimant can perform work at the RFC.

R. 200. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges this RFC determination on a number of bases. Plaintiff first argues that the ALJ erred when assessing the opinions of Plaintiff's treating psychiatrist, Dr. Al-Rashdan. *Plaintiff's Brief*, ECF No. 11, pp. 13–21, 25; *Plaintiff's Reply Brief*, ECF No. 17, pp. 1–5. In considering Dr. Al-Rashdan's opinions, the ALJ found some portions "persuasive" and other portions "not persuasive," reasoning as follows:

In September 2018, Dr. Mohamad Al-Rashdan noted the claimant suffers from PTSD and essential thrombocythemia with such symptoms as dizziness, fatigue, poor concentration, nausea, restlessness, hypervigilance, irritable mood, anxiousness, circumstantial thought processes, and morbid ideation (Ex. 12F). Dr. Al-Rashdan opined the claimant can understand, remember, and carry out very short and simple instructions, ask simple questions, request assistance, and be aware of normal hazards and take appropriate precautions. This port [sic] of the opinion is persuasive because it is supported by the mostly normal mental status examination findings noted in the record.

Dr. Al-Rashdan also opined the claimant has serious limitations in his ability to accept instructions and respond appropriately to criticism from supervisors, set realistic goals, maintain socially appropriate behavior, travel in unfamiliar places, and use public transportation; and is unable to remember work-like procedures, maintain attention for a 2-hour segment, maintain regular attendance and be punctual within customary [standards], sustain an ordinary routine, work in coordination with others, make simple work-related decisions, complete a normal workday/workweek without interruptions from psychologically based symptoms, perform at a consistent pace, get along with coworkers or peers, respond appropriately to changes in a routine work setting, deal with normal work stress, understand and remember detailed instructions, carry out detailed instructions, deal with stress of semiskilled and skilled work, and interact appropriately with the general public. This portion of the opinion is not persuasive because the mostly normal mental status examination findings noted in the record suggest the claimant has greater functional abilities than those noted in this portion of Dr. Al-Rashdan's opinion.

R. 201–02.

Plaintiff argues that the ALJ mischaracterized the medical evidence as revealing "mostly normal" mental status examination findings, contending that the ALJ engaged in "cherry picking" and pointing to other evidence in the record that Plaintiff believes supports his position. *Plaintiff's Brief*, ECF No. 11, pp. 13–17; *Plaintiff's Reply Brief*, ECF No. 17, pp. 1–3. Plaintiff's arguments are not well taken. A review of the medical record reveals that the ALJ fairly characterized the mental status examination findings. Although Plaintiff points to some contrary evidence in the record, there is no evidence of impermissible "cherry picking" and the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of*

*Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58

(3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011)

("Courts are not permitted to reweigh the evidence or impose their own factual determinations

[under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F.

App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of

conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that conflict.'")

(quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)); *Davison v. Comm'r of Soc. Sec.*, No.

CV 18-15840, 2020 WL 3638414, at *8 (D.N.J. July 6, 2020) ("The ALJ cited to multiple other

reports and surveyed a significant amount of evidence. He was not required to discuss or

describe every page of the record. He did not, as [the claimant] seems to suggest, cherry pick a

handful of positive statements out of a universe of negative statements."); *Lewis v. Comm'r of

Soc. Sec.*, No. 15CV06275, 2017 WL 6329703, at *8 (D.N.J. Dec. 11, 2017) ("Though the

Plaintiff accuses the ALJ of cherry-picking evidence, it actually appears that the Plaintiff is the

one guilty of cherry-picking since the bulk of the medical record seems to indicate minimal

issues with executive function and mental capabilities."). The Court therefore declines Plaintiff's

invitation to re-weigh the evidence or to impose Plaintiff's or this Court's own factual

determination. *See Chandler*, 667 F.3d at 359; *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Circ.

2014) (stating that a reviewing court "must not substitute [its] own judgment for that of the fact

finder").

  Plaintiff also characterizes the ALJ's statement that the findings on mental status

examinations were "mostly normal" as nothing more than a layperson's observation. *Plaintiff's

Reply Brief*, ECF No. 17, pp. 1–2. The Court rejects this characterization. As the ALJ's

recitation of the various mental status examinations accurately notes, the practitioners themselves

described their own findings as essentially normal. R. 200 (citing, *inter alia*, Ex. 18F, p. 88 [R. 1078] (reflecting, *inter alia*, "normal psychomotor activity," "no abnormal movements noted," "speech is normal," "cognitive domains grossly normal"); Ex. 11F, pp. 32−33 [R. 831] (reflecting, *inter alia*, "normal psychomotor activity," "speech is normal in rate tone and fluency," "normal impulse control," and "cognitive domains are grossly normal"); Ex. 18F, p. 206 [R. 1196] (same); Ex. 18F, pp. 100−01, 131, 163, 181 [R. 1090−91, 1121, 1153, 1171] (reflecting, *inter alia*, "normal psychomotor activity," "no abnormal movements noted," "speech is normal," "cognitive domains grossly normal").[3]

Plaintiff also argues that the ALJ failed to articulate how he considered the relevant regulatory factors, supportability and consistency, when weighing Dr. Al-Rashdan's opinions. *Plaintiff's Brief*, ECF No. 11, pp. 16−17. This Court disagrees. For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical

---

[3] Plaintiff similarly argues that "the ALJ erred to the extent he found the opinions from nonexamining state agency psychologists 'persuasive' based on his conclusion that they are consistent with 'mostly normal' mental status exam findings in the treatment records[.]" *Plaintiff's Brief*, ECF No. 11, p. 20. However, for the reasons explained above, the ALJ properly characterized the medical evidence in this regard and Plaintiff's argument therefore fails.
[4] As previously noted, Plaintiff's claim was filed on September 19, 2017.

source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* at 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate his or her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* at 404.1520c(b). "Specifically, the ALJ must explain how he [or she] considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to— explain how he [or she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*,

18

No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

Here, the ALJ, after detailing the mental evidence, explained why the mostly normal mental status examination findings supported—or failed to support—portions of Dr. Al-Rashdan's opinions, rendering certain portions either persuasive or unpersuasive. R. 200–02; *see also* 20 C.F.R. § 404.1520c(c)(1) (addressing the supportability factor when considering medical opinions); *Guillory v. Saul*, No. 1:19-CV-632, 2021 WL 1600283, at *6 (E.D. Tex. Apr. 23, 2021) (finding that "the ALJ properly addressed the supportability factor [under 20 C.F.R. §§ 404.1520c and 416.920c] because the ALJ reasoned that Dr. Kanneganti's opinion was mostly unpersuasive because his opinion lacked support from objective medical evidence"). In discounting the more extreme portions of Dr. Al-Rashdan's opinions, the ALJ expressly stated that "the mostly normal mental status examination findings noted in the record suggest the claimant has greater functional abilities than those noted in this portion of Dr. Al-Rashdan's opinion." R. 202. A fair reading of this reasoning reflects that the ALJ found that Dr. Al-Rashdan's more extreme limitations were not persuasive because they were inconsistent with Plaintiff's functional abilities as reflected in the mostly normal findings on mental status examination. *Id.*; *see also* 20 C.F.R. § 404.1520c(c)(2) (addressing the consistency factor when considering medical opinions); *Guillory*, 2021 WL 1600283, at *6 (finding that "the ALJ properly addressed the consistency factor [under 20 C.F.R. §§ 404.1520c and 416.920c] because the ALJ noted that Dr. Kanneganti's opinion was not entirely consistent with Plaintiff's mental status exams" that "showed euthymic (normal) or neutral mood, intact memory, good concentration, no cognitive issues, and no difficulties in social functioning"); *Zajac v. Comm'r of Soc. Sec.*, No. 1:20-CV-135, 2021 WL 1169466, at *4 (W.D. Mich. Mar. 29, 2021) (finding that

the ALJ properly analyzed an opinion under §§ 404.1520c(c)(1)−(2) and 416.920c(c)(1)−(2)
where the ALJ "articulated proper bases for finding the opinion unpersuasive, namely,
consistently normal physical and mental examination findings, and she supported her reasons
with citations to specific evidence in the record"); *Erin H. v. Saul*, No. 2:20-CV-00191-MKD,
2021 WL 1182366, at *9 (E.D. Wash. Mar. 29, 2021) (stating that the "ALJ's finding that Dr.
Clark's opinion is inconsistent with the longitudinal record was a specific and legitimate reason,
supported by substantial evidence to reject the opinion[,]" including that "the treatment records
generally reflect normal psychological functioning, including normal mood, affect, memory,
orientation, behavior, concentration, attention, fund of knowledge, speech, comprehension,
insight, and judgment"). Accordingly, based on this record, the Court cannot find that the ALJ
failed to properly consider the supportability and consistency of Dr. Al-Rashdan's opinions in
accordance with the governing regulation. *See* § 404.1520c(c)(1)−(2).

Plaintiff also argues that the ALJ erred when he found portions of Dr. Al-Rashdan's
opinion "persuasive," but then failed to incorporate those mental limitations, *i.e.*, "very short and
simple instructions," into the RFC. *Plaintiff's Brief*, ECF No. 11, pp. 17−21; *Plaintiff's Reply
Brief*, ECF No. 17, pp. 4−5. Plaintiff's argument is not well taken. As a preliminary matter,
Plaintiff's precise argument is difficult to follow because he sometimes argues that the ALJ
failed to incorporate Dr. Al-Rashdan's limitation regarding very short "instructions" and at other
times he argues that the ALJ instead erred by failing to incorporate into the RFC Dr. Al-
Rashdan's restriction regarding very short "tasks." *See*, *e.g.*, *Plaintiff's Brief*, ECF No. 11, pp. 18
("The ALJ's mental RFC does not account for the opinion from the treating psychiatrist that Mr.
B[.] is restricted to understand, remember, and carry out 'very short' tasks despite purported
acceptance of this finding (compare Tr. 201 of ALJ decision adopting this restriction with Tr.

196 detailing the RFC found for Plaintiff)"), 19 ("the ALJ found Mr. B[.] not limited only to 'simple, repetitive tasks' but also found Plaintiff limited to 'very short' tasks"); *Plaintiff's Reply Brief*, ECF No. 17, pp. 4–5 (referring to "the opinion from Dr. Al-Rashdan that Mr. B[.] cannot perform more than 'very short' tasks as he did not address this limitation at all other than purporting to adopt it, but not including it in the RFC finding"). However, Dr. Al-Rashdan did not address limitations regarding very short "tasks;" he proposed only a limitation regarding "very short and simple instructions[.]" R. 931. Moreover, to the extent that Plaintiff complains that the ALJ erred by referring to only "simple instructions" instead of "very short and simple instructions" in the RFC, R. 196, he has not persuaded this Court that any such error is anything other than a harmless oversight. Notably, in support of this argument, Plaintiff refers to cases that address simple or short "tasks" rather than "instructions." *See Plaintiff's Brief*, ECF No. 19–20. However, Plaintiff has not explained how "tasks" are synonymous with "instructions" and, absent any explanation, these cited cases are therefore inapposite. *See id.* At bottom, this Court cannot find that this argument can serve as a basis for remand.

Finally, Plaintiff complains in a footnote that the ALJ erred in assessing Dr. Al-Rashdan's opinion by "summarily reject[ing]" the determination from the Department of Veterans Affairs ("VA") that Plaintiff "is 100 percent disabled," "in violation of Third Circuit law." *Plaintiff's Brief*, ECF No. 11, p. 17 n.13 (citing R. 202, 375–80; *Kane v. Heckler*, 776 F.3d 1130, 1134 (3d Cir. 1985)). He argues that "[w]hile the Commissioner has purported to overrule such cases in recent changes to his regulations (20 C.F.R. § 404.1520b and § 404.1504), the Third Circuit has yet to rule on this change." *Id.*

Plaintiff's argument is not well taken. As Plaintiff essentially concedes, the Commissioner's regulations that apply to claims filed on or after March 27, 2017, provide that

decisions by other governmental agencies are "inherently neither valuable nor persuasive to the issue of whether [the claimant is] disabled or blind under the Act[.]" 20 C.F.R. § 404.1520b(c)(1); *see also D.G. v. Comm'r of Soc. Sec.*, No. CV 20-2774, 2021 WL 3047065, at *4 (D.N.J. July 20, 2021) (citing to 20 C.F.R. § 404.1520b(c) and rejecting Plaintiff's assertion that "the ALJ erred by failing to take into consideration the disability determination made by the Veteran's Administration"). In any event, the ALJ did not "summarily reject" the VA disability ratings, but specifically considered them and explained why he found them unpersuasive:

> Regarding the VA disability ratings noted in the record, I find these ratings not to be persuasive. First, there is no explanation whatsoever of the disability ratios offered—it is just a recital of the impairments followed by the assigned percentages. Additionally, the VA suggested the claimant is totally disabled, which is not supported by the evidence. Again, the hearing test results showing mild hearing loss, the X-ray results showing mostly normal findings, Dr. Tai's findings, the mostly normal mental status examination findings in the record, and the claimant's treatment notes showing mostly normal physical examination findings (including 5/5 strength in all extremities, normal neurologic findings, normal or close to normal range of motion findings, etc.) all support the finding the claimant can perform work at the RFC.

R. 202. The Court finds no error with the ALJ's consideration of the VA determination.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of the opinions of Dr. Al-Rashdan and the state agency reviewing psychologists.

### B.   Subjective Complaints

Plaintiff also contends that the ALJ erred in evaluating his subjective complaints. *Plaintiff's Brief*, ECF No. 11, pp. 21−24. "Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate

22

a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d

Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process

in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16,

2016). First, the ALJ "must consider whether there is an underlying medically determinable

physical or mental impairment(s) that could reasonably be expected to produce an individual's

symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that

could reasonably be expected to produce an individual's symptoms is established, [the ALJ]

evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the

symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also*

*Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and

persistence of the pain or symptom and the extent to which it affects the ability to work]

obviously requires the ALJ to determine the extent to which a claimant is accurately stating the

degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. §

404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical

evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. §

404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration,

frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the

type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate

pain or other symptoms; treatment, other than medication, currently received or have received

for relief of pain or other symptoms; any measures currently used or have used to relieve pain or

other symptoms; and other factors concerning your functional limitations and restrictions due to

pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective

complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them

23

where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134

(citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d

Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as

there is a sufficient basis for the ALJ's decision to discredit a witness.").[5]

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered

Plaintiff's subjective complaints. R. 197, 202–03. The ALJ found that Plaintiff's medically

determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's

statements "concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for the reasons

explained in this decision." R. 197. As previously discussed, the ALJ detailed the medical

evidence and other evidence to support his findings. R. 197–203. In considering this evidence,

the ALJ reasoned as follows:

> Symptoms may sometimes suggest a greater degree of impairment than can be
> shown by the medical evidence alone. 20 CFR 404.1529(c). Therefore, in addition
> to the above-cited evidence, the entire case record has also been considered,
> including the claimant's statements, statements or other information provided by
> their medical sources or other third parties, and any other relevant evidence in the
> record. These statements have been evaluated pursuant to the factors set forth by
> the Commissioner in Social Security Ruling 16-3p. I have addressed only the
> specific factors pertinent to the evidence of record as required by SSR 16-3p. The
> claimant testified he suffers from fatigue. He testified all of his impairments
> exacerbate his fibromyalgia. He testified he struggles to get out of bed. He testified
> he suffers from nausea and dizziness. He testified he suffers from left knee pain and
> lower back pain. He testified he suffers from migraines. He testified his hands and
> feet go numb. He testified he is a recluse and does not get along with other people.
> He testified he is susceptible to blood clots. He testified he suffers from anxiety and
> cannot fly any longer. He testified he does not sleep well. He testified he can sit for
> 15-20 minutes at a time. He testified he can stand for only 5-10 minutes at a time

[5]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term
"credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not
make statements about an individual's truthfulness, the overarching task of assessing whether an
individual's statements are consistent with other record evidence remains the same." *Levyash v.
Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

due to vertigo. He testified he can lift/carry 5-10 pounds. He testified his wife must take care of cleaning and laundry. He testified he has no ability to concentrate. The claimant's testimony cannot be found fully consistent with the evidence because the hearing test results showing mild hearing loss, the X-ray results showing mostly normal findings, Dr. Tai's findings, the mostly normal mental status examination findings in the record, and the claimant's treatment notes showing mostly normal physical examination findings (including 5/5 strength in all extremities, normal neurologic findings, normal or close to normal range of motion findings, etc.) all suggest the claimant has greater functional abilities than he alleges and support the finding he can perform work at the RFC.

In November 2017, the claimant completed a questionnaire and reported he has some difficulty dressing himself, and getting in and out of cars, buses, trains, and airplanes; has no difficulty getting in and out of bed, lifting a cup, walking outdoors, washing and drying his entire body, and turning regular faucets on and off; has much difficulty bending down to pick up clothes from the floor and walking 2-3 kilometers; and is unable to participate in recreational activities and sports (Ex. 7F at pg. 4). On a 10-point pain scale, he reported he has experienced an 8 pain level during the past week. He reported he was not doing well and reported a 9 with 0 being the best and 10 being the worst. In February 2018, the claimant completed a questionnaire and reported he has no difficulty dressing himself, lifting a cup, walking outdoors, and turning regular faucets on and off; has some difficulty getting in and out of bed, washing and drying his entire body, and getting in and out of cars, buses, trains, and airplanes; has great difficulty; has much difficulty bending down to pick up clothes from the floor and walking 2-3 kilometers; and is unable to participate in recreational activities and sports (Ex. 15F at pg. 15). These statements are found somewhat consistent with the evidence but do not lead to a finding of disability. The claimant's general independence with activities of daily living, the hearing test results showing mild hearing loss, the X-ray results showing mostly normal findings, Dr. Tai's findings, the mostly normal mental status examination findings in the record, and the claimant's treatment notes showing mostly normal physical examination findings (including 5/5 strength in all extremities, normal neurologic findings, normal or close to normal range of motion findings, etc.) all support the finding the claimant can perform work at the RFC.

R. 202−03. In the view of this Court, this record provides substantial support for the ALJ's

decision to discount Plaintiff's subjective statements as inconsistent with the record evidence.

*Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff challenges this finding, contending that the ALJ's consideration of Plaintiff's

daily activities did not support the ALJ's discounting of Plaintiff's subjective complaints.

*Plaintiff's Brief*, ECF No. 11, pp. 23−24. However, it was not improper for the ALJ to take these

activities into account when assessing Plaintiff's subjective complaints and testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(i) (providing that the ALJ may consider a claimant's daily activities), 416.929(c)(3)(i) (same); *see also Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) ("The evidence from [the claimant's] doctors and the evidence regarding his daily activities . . . support the ALJ's finding with respect to [the claimant's] credibility."); *Loneker v. Comm'r of Soc. Sec.*, No. CV 17-2006, 2018 WL 5784996, at *4 (D.N.J. Nov. 5, 2018) ("The ALJ's decision is consistent with the Third Circuit's recognition that "[a]lthough 'any statements of the individual concerning his or her symptoms must be carefully considered,' the ALJ is not required to credit them," particularly where such statements are undermined by evidence of a more active lifestyle.") (quoting *Chandler v. Comm'r*, 667 F.3d 356, 363 (3d Cir. 2011)).

Plaintiff also argues that the ALJ erred by fail[ing] to consider Plaintiff's "exemplary" and "honorable" work history, with earnings that exceeded the disability benefits that he would receive should he be found disabled. *Plaintiff's Brief*, ECF No. 11, p. 24. The Court is not persuaded that this issue requires remand. The United States Court of Appeals for the Third Circuit has upheld an ALJ's evaluation of a claimant's subjective complaints where the ALJ did not "explicitly discuss his years of uninterrupted employment[,]" but where the ALJ did explain why other evidence in the record belied the claimant's subjective complaints. *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015); *see also Forcinito v. Comm'r of Soc. Sec.*, No. CIV. 12-6940, 2014 WL 252095, at *9 (D.N.J. Jan. 23, 2014) ("[W]ork history is only one of many factors the ALJ may consider in assessing claimant's credibility. . . . Work history is not dispositive of credibility and the question of credibility is left to the ALJ's discretion after considering all of the relevant factors.") (citations omitted). Here, as noted above, the ALJ detailed why other record evidence undermined Plaintiff's subjective complaints. Accordingly,

the Court finds that the ALJ sufficiently explained the reasoning applied in evaluating Plaintiff's subjective complaints. The ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See id.*; SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports").

### C.       Step Five

Plaintiff also challenges the ALJ's step five determination, arguing that the Commissioner failed to carry his burden at that stage because the hypothetical questions posed to the vocational expert, which included the ALJ's RFC determination, failed to include all of Plaintiff's claimed limitations. *Plaintiff's Brief*, ECF No. 11, pp. 19–20, 25–27; *Plaintiff's Reply Brief*, ECF No. 17, pp. 4–5. Plaintiff's arguments are not well taken.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Unlike in the first four steps of the sequential evaluation, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether

other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id.* at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations'" in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id.* (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments

that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

Here, the hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 196, 242–43. The vocational expert responded that the jobs of mail clerk, price marker, and photocopier machine operator would be appropriate for such an individual. R. 243–44. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical questions is that all his alleged impairments were not addressed, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

Plaintiff argues that the ALJ erred at step five because the ALJ identified jobs that correspond to a Dictionary of Occupational Titles ("DOT") specific vocational preparation ("SVP")[6] level two ("SVP 2"), but that Plaintiff's credibly established limitation of "very short" instructions or tasks corresponds to SVP 1. *Plaintiff's Brief*, ECF No. 11, p. 19. Plaintiff therefore takes the position that this "create[es] a conflict with the <u>DOT</u> as has been held by

---

[6] "The DOT [Dictionary of Occupational Titles] lists a specific vocational preparation (SVP) time for each described occupation." *Thomas v. Comm'r of Soc. Sec.*, 2019 WL 3562691, at *7 n.8 (D.N.J. Aug. 6, 2019). "SVP" refers to the amount of time required by a typical worker to learn how to perform a specific job." *Jones v. Astrue*, 570 F. Supp. 2d 708, 716 n.5 (E.D. Pa. 2007), *aff'd sub nom. Jones v. Comm'r of Soc. Sec.*, 275 F. App'x 166 (3d Cir. 2008). "Using the skill level definitions in 20 C.F.R. § 404.1568, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." *Thomas*, 2019 WL 3562691, at *7 n.8.

multiple Courts that have considered this exact same issue." *Id.*; *see also id.* at 20, 25; *Plaintiff's Reply Brief*, ECF No. 17, pp. 4–5.

Plaintiff's argument in this regard is not well taken. It is true that the vocational expert identified three jobs, *i.e.,* mail clerk, price marker, and photocopier machine operator, that a hypothetical individual with Plaintiff's RFC could perform. R. 243–44. The vocational expert also stated that her testimony was consistent with the DOT; the vocational expert also testified that, in reaching this conclusion, she relied on her expertise and professional experience. R. 248–49, 253; *see also Zirnsak*, 777 F.3d at 617 ("As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT."); *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189–90 (3d Cir. 2007) (finding the ALJ did not err in relying on a vocational expert who based his opinion on thirty years of his experience); *Butler v. Colvin*, No. CIV. 13-7488, 2015 WL 570167, at *9 (D.N.J. Feb. 11, 2015) (noting that Judges in the Third Circuit "have encouraged" vocational experts "to rely on their experiences rather than solely on the DOT"). Notably, Plaintiff's counsel never objected or challenged the vocational expert's testimony as inconsistent with the DOT. R. 249–53. Plaintiff's current attempt to raise a discrepancy between the vocational expert's testimony and the DOT therefore comes too late and will not serve as a basis to remand this matter. *See Tonti v. Saul*, No. CV 20-92, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) ("Here, [the plaintiff] neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings open for post-hearing submissions. Consequently, she waived the right to object to that testimony."); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *9 (D.N.J. Jan. 31, 2019) (declining to remand the matter where the plaintiff's challenge to an alleged discrepancy between the vocational expert's

testimony and the DOT listings was unexplored during the hearing and later raised by the plaintiff in challenging the ALJ's ruling).

In short, the Court finds that the Acting Commissioner has carried her burden at step five of the sequential evaluation.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).


**IT IS SO ORDERED.**


Date:  August 17, 2021                        _____*s/Norah McCann King*_____
                                              NORAH McCANN KING
                                              UNITED STATES MAGISTRATE JUDGE